IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ONE UNITY INVESTMENT LLC, | § § | |
| *Plaintiff,* | § § | |
| V. | § § | CIVIL ACTION NO. 4:23-cv-2455 |
| AXIS SURPLUS INSURANCE COMPANY, | § § | (JURY) |
| *Defendant,* | § § § | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF THIS COURT:

COMES NOW Plaintiff, One Unity Investment, LLC, ("Plaintiff"), Non-Movant herein, and files this Response to Defendant's Motion for Summary Judgment, and for cause would respectfully show unto this Court the following:

### I. SUMMARY OF THE ARGUMENT

1. This lawsuit involves the issue of coverage for damages caused by a hail and windstorm to primarily the roof of Plaintiff's property. This case involves particularly egregious behavior of Defendant. Here, Defendant's inspecting adjuster and expert, Brandon Allen, has admitted under oath that his report and its conclusions (upon which both Defendant's Motion and coverage decision were predicated) was falsified without his consent to ignore damages and does not reflect his actual opinions based upon his inspection.

2. Defendant, wanting to try anything to avoid a jury hearing this shocking testimony, has sought Summary Judgment on both contractual and extra-contractual grounds. Plaintiff contends that Defendant's Motion should be denied. Defendant predicates its Motion solely on the "doctrine of concurrent causation," namely that when two events combine to cause damage to a property,

one covered and one non-covered, that it is the obligation of Plaintiff to offer some evidence upon which the factfinder can segregate those damages.

3. To support its assertion, Defendant manufactures two arguments (often with inadmissible evidence): First, that because Plaintiff's expert considered a date of loss outside the Policy period (which he then discounted) such that there is no evidence of segregation; and second, that because the roof on the property exhibited signs of aging at the time of the loss that AXIS Surplus Insurance Company ("AXIS" or "Defendant") should not be obligated to pay for any storm related damages which occurred during the Policy period. Plaintiff's argument against the granting of Defendant's Motion for Summary Judgment relies on three main arguments to defeat "concurrent causation" rationale:

4. First, the doctrine of concurrent causation does not apply to the facts of this case. Concurrent causation is for when two or more causes act concurrently to cause damage. Here, the issue, even as raised by Defendant, is that there may be separate, independent events causing damages to the same roof. When separate and independent events separately cause damages, that is not concurrent causation. Even the case cited by Defendant as authoritative holds this premise. Just because there is wear and tear on a roof, like all not brand-new roofs, does not warrant application of the doctrine of concurrent causation, it does not apply when the evidence shows that the repairs-at-issue are related solely to the covered loss.

5. Second, the opinions of Plaintiff's expert on causation, Dr. Hall, have been twisted and manufactured by Defendant to support its Motion. Defendant represents to the Court that Dr. Hall opined that there were two hailstorms, one inside and one outside the relevant policy period, and that he could not determine which damage was caused by which storm. This is not the case; Dr. Hall's testimony was that he believed that there were two storms warranting research as the possible cause of the hail damage. However, he discounted the one outside the Policy period as

unlikely to have caused damage or have occurred at all. Therefore, it would be impossible to attribute damages to hail from a storm date he found was unlikely to have occurred.

6.     Third, even notwithstanding the first argument, there would still be fact issues to resolve which relate to the cause of damages. Any wear and tear on the roof is distinguishable from the hail damage on the roof and was not part of Plaintiff's sought damages in this lawsuit. Plaintiff has presented factual issues showing that damage sufficient to award replacement of the roof occurred during the Policy period. The germane fact issue upon which summary judgment turns is whether Plaintiff can elicit some evidence to show that hail which fell during the Policy period did damage the roof. Plaintiff's expert, Neil Hall, was clear that there was evidence of damages to Plaintiff's property from a hailstorm during the policy period. Thus, Plaintiff has met their burden.

7.     A finding for Plaintiff on any one of these issues is sufficient to defeat Summary Judgment. More than this, Defendant's Motion is not one of concurrent causation, rather it is an attempt to re-underwrite the property and avoid its contractual obligations. AXIS' argument, at its core, is that no coverage should be afforded to an older roof if not was not in immaculate condition at the time of loss; that any pre-existing wear or damage to a roof serves to avoid coverage. This is not the doctrine of concurrent causation, rather, it is a bad-faith attempt to manipulate the doctrine to avoid coverage. This is not a novel question, other courts have looked at these same issues and reached the same conclusions, notably the Fifth Circuit.

8.     Similarly, Defendant also asks for summary judgment on the extra-contractual damages and Tex. Ins. Code Ch. 542 penalties, arising from the premise that Plaintiff cannot meet their burden on breach of contract damages. As detailed herein, the summary judgment evidence shows there is a covered loss that Defendant failed to fully pay. Therefore, an insurance code 542 penalty is a viable cause of action. Further, this case presents some of the most clear cut bad faith testimony which could occur. Defendant's own adjuster and designated expert, Brandon Allen, admits that his reports and opinions were changed and fabricated to avoid coverage by people who did not

inspect the property. He testified that the engineer who was hired by Defendant after him to support his manipulated findings, also had faulty, "laughable", and inaccurate findings to avoid coverage. It is difficult to imagine a more compelling set of bad faith supporting facts, especially at the summary judgment stage. For all of these reasons, Defendant's Motion should be denied.

## II.   OBJECTIONS TO DEFENDANT'S EVIDENCE

9.   Defendant supports the "undisputed" facts of its Motion by attempting to back-door admit the opinions and findings of its third-party inspectors and experts, through the use of a business records affidavit, but without offering any admissible testimony qualifying those expert opinions or any admissible testimony that the opinions offered are qualified and accurate. This is improper for consideration as evidence as part of a Motion for Summary Judgment. Plaintiff therefore lodges the following objections to evidence:

10.   First, Plaintiff objects to Exhibit A-2, the Straight Line Global Report by Brandon Allen. Defendant attaches the report of its adjuster, Brandon Allen, who inspected the property on its behalf. It uses this report to establish its inspection results and the condition of the property which it relied upon in making its decision. Plaintiff objects because the report is hearsay within hearsay and more importantly an admittedly false and fabricated document. The report is hearsay within hearsay because Defendant authenticates this document as a business record of Axis, but never bothers to authenticate whether the document is actually the one Brandon Allen drafted, and one containing his true findings. Allen has been deposed and admits the document is false. In his deposition, Allen admitted that he was the inspector of the property at issue for Straight Line Global. Deposition of Allen 6:20-7:2 [Appx. 0003]. He was shown the report attached as Exhibit A-2 to Defendant's Motion at his deposition and testified that it was "inaccurate" to call this report his, and that "it does not represent them [his opinions] at all." Deposition of Allen 27:11-28:3 [Appx. 0008]; *see also* Deposition of Allen, generally, as a majority of the Deposition covers the numerous changes made to and the disagreements which Allen has with the report bearing his

signature. There is additional commentary in the deposition discussing his issues with the report and who may have changed it and why, but for purposes of striking this evidence, this is more than sufficient. See, e..g., Deposition of Allen pp.22:25-24:17 [Appx. 0007] where Allen talks about many of the specific changes to his findings made to the report without his approval.

11.     Plaintiff also objects to the EFI Global expert report attached as Exhibit B and B-1 to Defendant's Motion and the documents attached thereto, most notably the engineering reports from EFI Global and any attachments. The objection is hearsay within hearsay. While Defendant provides a declaration establishing these documents as a business record, it does not establish that these documents authored by third parties are sworn, accurate, and reliable for the information contained therein, nor does it attempt to qualify said experts as competent for the conclusions reached or opinions upon which they rely. It appears from Defendant's Motion that it not only intends to use these records as setting the timeline of documents and events, but it also expects the Court consider the "expert conclusions". This is improper and prejudicial. *See Provident Life & Accident Ins. Co. v. Goel,* 274 F.3d 984, 1000 (5th Cir.2001) ("Unsworn expert reports ... do not qualify as affidavits or otherwise admissible evidence for [the] purpose of Rule 56, and may be disregarded by the court when ruling on a motion for summary judgment."); *Faith Temple Church of God v. Church Mut. Ins.,* 2018 WL 9869610 (E.D. Tex. 2018) (Expert reports do not constitute competent summary judgment evidence.) There is nothing in the declaration which proves up the report as competent expert testimony. Defendant was required to do more than just provide a business record affidavit, it must also establish that the expert was qualified to formulate the opinions, that the opinions are reliable and accurate from the person that is the expert. Given the issues with the Allen report and unauthorized changes, this is a more than just a technical concern. Without this, this evidence should be stricken from consideration.

12.     Here, Defendant is asking that Plaintiffs lawsuit be dismissed without trial or recovery and as such it should comply with the Federal Rules of Evidence. As a broader issue, the arguments

of Defendant's Motion are so laden with references to and reliance upon this inadmissible testimony, that the Motion would make no sense otherwise. To consider the remaining arguments, the Court would essentially need to rewrite the Motion to be able to consider the remaining evidence used to support the Motion. The Court should not have that responsibility. To the extent that Defendant would make an argument that evidence still exists to support summary judgment notwithstanding these objectionable documents, this argument would be disingenuous. Why include several hundred pages of exhibits to the Motion if they are not material to the Court's determination? For these reasons, Plaintiff requests that this Court sustain its objections to Defendant's Evidence in Support of its Motion for Summary Judgment and strike these exhibits for the reasons stated above.

### III.   SUMMARY JUDGMENT EVIDENCE

13.   As Defendant's Motion provides an overly exhaustive provision of documents needed for the Response to the issues set forth in the Motion, Plaintiff will use the citations to Defendant's evidence. Nothing herein should be deemed to waive the objections to evidence to particular pieces of evidence provided by Defendant as per the objections in the prior section of this Response. Plaintiff does include a brief Appendix [Appx. ____ ] for some additional materials including:

| | | |
|---|---|---|
| Exhibit A | Deposition of Brandon Allen |
| Exhibit B | Deposition of Neil Hall |
| Exhibit C | Declaration of Neil Hall |
| Exhibit D | Defendant's Designation of Expert Witnesses [for purposes of establishing Defendants contentions] |

### IV.   STANDARD OF REVIEW

14.   Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548 (1986); *Ragas v. Tennessee Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir.1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.,* 402 F.3d 536, 540 (5th Cir.2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Anderson,* 477 U.S. at 254–55.

## V.     ARGUMENT AND AUTHORITIES

15.     Defendant's sole legal argument to support its Motion for Summary Judgment is that the doctrine of concurrent causation bars Plaintiff's cause of action. Defendant breaks their Motion into 3 parts: (1) a primer on the doctrine of concurrent causation; (2) an attempt to state that concurrent causation applies and bars the claim due to another hailstorm occurring outside the Policy period; and (3) an attempt to state that concurrent causation applies and bars the claim due to Plaintiff's expert not segregating wear and tear damages from hail impact damages. Following from this supposition, Defendant then argues that since the breach of contract action is barred, then the extra-contractual causes of action must fail, thus its entitlement to summary judgment.

16.     Each of the issues raised by Defendant is faulty due to Defendant flagrantly disregarding the operative law and facts at issue. Much like Defendant did with the Allen report, Defendant disregards authority, omits language from its cited case law, and splices deposition testimony in order to manufacture its arguments. When fully explored, the law and fact both do not agree with Defendant. Similarly, when the full context of the quotations are explored, the statements used by Defendant are shown to be misleading.

A. **The Doctrine of Concurrent Causation does not apply to the facts of this case.**

17. While Defendant cites some of the preliminary law on concurrent causation, there are other relevant opinions very related to the issues of this particular matter curiously omitted from Defendant's Motion which show that the doctrine of concurrent causation does not apply to the facts of this case. Defendant correctly states the general premise of the doctrine of concurrent causation that when covered and excluded perils combine to cause damages, that the insured must present some evidence affording the jury a reasonable basis upon which to allocate the damage. *See* Defendant's Motion, p. 8.

18. While Defendant gets part of the doctrine correct, it fails to acknowledge that the Fifth Circuit also held the converse to be true in the matter of *Dillon Gage, Inc. v. Certain Underwriters at Lloyds,* 992 F.3d 401 (5th Cir. [Tex.] 2021), holding:

> Under Texas law, when a covered event and an excluded event each independently cause the loss, separate and independent causation exists, and the insurer must provide coverage. But when excluded and covered events combine to cause a loss and the two causes cannot be separated, concurrent causation exists, and the exclusion is triggered.

*Id.,* at 405; *see also Methodist Hosp. of Dallas v. Affiliated FM Ins. Co.,* 2021 WL 6140253 (5th Cir. [Tex.] 2021). In fact, Defendant's Motion goes through an analysis of *Thompson v. State Farm Lloyds,* 2024 WL 4544783 (S.D.Tex 2024) as an authoritative case. See Defendant's Motion, p. 9. Yet, Defendant's analysis omits the concluding the part of the holding which states:

> Although questions remain unanswered about the scope of the concurrent causation doctrine, the Fifth Circuit recently held that the doctrine does not preclude recovery where the insured presents evidence demonstrating that all of the claimed damage resulted from a covered cause. *See Advanced Indicator & Mfg., Inc. v. Acadia Ins. Co.*, 50 F.4th 469, 477 (5th Cir. 2022). Unfortunately for Thompson, she has no evidence demonstrating that all of the claimed damage resulted from the September 28, 2021 hailstorm.

*Id.*, at *3. As a preliminary matter, the doctrine of concurrent causation requires that the losses be concurrent. "Once a defendant has submitted sufficient evidence that a non-covered peril possibly combined with a covered peril to create a plaintiff's damages, the plaintiff has two

options: (1) produce evidence indicating that the claimed loss is *solely attributable* to a covered peril or (2) produce evidence that a jury could use to reasonably segregate covered and non-covered losses." *Winterfield United Methodist Church v. Church Mutual*, 2025 WL 63670 (E.D.Tex 2025) at *3 (*citing Advanced Indicator & Mfg., Inc.*, 50 F.4th at 477 (5th Cir. 2022)). Defendant has not made the attempt to argue concurrence, as opposed to separate and independent, in its Motion. "Separate and independent" is exactly the position taken by Plaintiff in this case. Plaintiff's engineering expert Neil Hall also offered that testimony in his declaration, expert report and deposition. Here there is express evidence that the event during the Policy period was the sole cause of the damages being sought in this lawsuit. The Declaration of Plaintiff's expert Neil Hall expressly says that:

> As stated in my report, I believe that the property sustained damages from a hail storm on March 22, 2022. To make repairs associated with the damages from the March 22, 2022, storm requires the repairs noted on Page 5 of my report. Damages to the property from other events were considered in my evaluation, but not included in my repair recommendations as those were solely related to the storm damage which I believe occurred as a result of the March 22, 2022 storm.

Declaration of Neil Hall [Appx. 0080] (referencing similar testimony in his Expert Report [Appx. 0088 - 0089] and in his deposition pp.33, 60-64 [Appx. 0055, 0061 - 0062]). This is the exact evidence which the Court found was absent from the record in *Thompson,* 2024 WL 4544783 at *3, which would have led to the Court denying the Motion for Summary Judgment and the matching the Fifth Circuit's holdings in *Gage*, *supra,* and *Advanced Indicator and Mfg.*, *supra.*

B.   **There is a sufficient fact issue to withstand summary judgment.**

19.   Even if the Court were to not deny Defendant's Motion for Summary Judgment for the preceding legal arguments, there is still a fact issue sufficient to defeat summary judgment even when applying the doctrine of concurrent causation. The facts of this case are different the facts of the cases cited by Defendant in its Motion. To defeat a Motion for Summary Judgment where it is alleged that the doctrine of concurrent causation could apply "[t]he insured must therefore present some evidence upon which the jury can allocate the damage attributable to the covered

peril." *Faith Temple*, 2018 WL 9869610 at *8; *Allison v. Fire Ins Exch.*, 98 S.W.3d 227, 258-59 (Tex.App.—Austin 2002) (citing *Wallis v. USAA*, 2 S.W.3d 300, 303 (Tex.App.—San Antonio 1999). "The insured is not required to establish the amount of its damages with mathematical precision, but there must be some reasonable basis upon which the [trier of fact's] finding rests." *National Union* v. *Puget Plastics Corp.*, 649 F. Supp. 2d 613, 650 (S.D. Tex. 2009); *see G.P. Partners, Ltd. V. Maryland Cas. Co.*, 505 F. App'x 389, 392 (5th Cir. 2013); *Feiss v. State Farm*, 392 F.3d 802, 808-09 (5th Cir. 2004). To meet a legal sufficiency challenge, a party only needs to put forth "[a]nything more than a scintilla of evidence." *Travelers Personal Sec. Ins. Co. v. McClelland,* 189 S.W.3d 846, 848 (Tex. App.—Houston [1st Dist.] 2006) (quoting *Formosa Plastics Corp. v. Presidio Eng'rs & Contractors, Inc.,* 960 S.W.2d 41, 48 (Tex. 1998)).

1. ***Issues relating the date of loss***

20. Plaintiff has established through testimony, experts, multiple reports, and the record as a whole that there is a reasonable basis from which a jury can distinguish Plaintiff's covered and uncovered losses. The Court should follow the rationale in *Travelers Personal Sec. Ins. Co. v. McClelland,* 189 S.W.3d 846, 848 (Tex. App.—Houston [1st Dist.] 2006), where one of the issues presented to the court was whether there was legally sufficient evidence to support the trial court's verdict that eighty percent of the Plaintiff's damages were attributable to a covered plumbing leak. *Travelers Personal Sec. Ins. Co.,* 189 S.W. 3d at 849. In that case, the Plaintiff's expert was not able to quantify exactly how much of the house was affected by plumbing leaks but introduced a diagram into evidence marking off what he believed represented the affected areas. *Id.* The Houston Court of Appeals found that this was sufficient to uphold the jury award. *Id.*

21. Defendant's sole argument with relation to date of loss is that Dr. Hall found that there could have been a possible hailstorm on March 17, 2021, and therefore there must be an allocation of damages between that date and the March 22, 2022, storm which Dr. Hall found as the date of loss for the purposes of the damages he found. Defendant's Brief, p. 10. There are several

problems with Defendant's analysis. First, it relies upon an impossible circumstance for which the doctrine of concurrent causation could not account, a "when did you stop beating your wife" type of trick question. Namely, Dr. Hall considered the dates of alternative storms, as he must, but ultimately concluded that the March 17, 2021, storm was unlikely, although not impossible, to have occurred. Declaration of Hall, pp. 2-3 (citing his deposition testimony) [Appx 0081 - 0082]. But this begs the question, how can Dr. Hall attribute damages to a storm which he believed was more likely than not to have **not** occurred? If there was more likely than not that there was no storm, there can then be no damage to attribute to that storm. Beyond this, when looking at the March 2021 storm Dr. Hall finds it further unlikely that this hailstorm, even if it did occur at the property would have been sufficient in strength to have caused the damages which he observed related to hail. *Id.,* at 2-3 (citing his deposition testimony) [Appx. 0081 - 0082]. These are two separate elements, the second is ignored by Defendant in its argument, which leads to Dr. Hall's proper discounting of the March 17, 2021, date since it was an unlikely to have occurred storm at the property which even if it did occur was unlikely to have sufficient strength to have impacted the roof, Hall's stated possibility of a possibility of a possibility. *Id.* In any event, this is sufficient evidence for a jury to allocate damages even under the concurrent causation analysis. "The insured is not required to establish the amount of its damages with mathematical precision, but there must be some reasonable basis upon which the [trier of fact's] finding rests." *National Union* v. *Puget Plastics Corp.*, 649 F. Supp. 2d 613, 650 (S.D. Tex. 2009); *see G.P. Partners, Ltd. V. Maryland Cas. Co.*, 505 F. App'x 389, 392 (5th Cir. 2013); *Feiss v. State Farm*, 392 F.3d 802, 808-09 (5th Cir. 2004). If a jury wished it could allocate damages between a storm likely to have occurred with damaging hail and one that has the possibility of a possibility of a possibility of potential damaging hail occurring.

22.     At its core, Defendant is playing games to try and hold Dr. Hall on a civil matter to a "beyond a reasonable doubt" standard, not one of a preponderance of the evidence. If Defendant

wishes to cross-examine Dr. Hall on this issue at trial to plead its case to the jury, it is free to do so, but dismissal of this action based upon this issue is improper.

    2. *__Issues relating to wear and tear v. hail__*

23.    Defendant's second issue of concurrent causation is because Hall acknowledges that the roof of the building had wear and tear, that this also requires a concurrent causation allocation. Not surprisingly, this is not the first time this issue has been tried. Recently, Defendant's same counsel tried this same argument against Plaintiff's same counsel in *Douglas v. Landmark American*, 2024 WL 4101934 (W.D. Tex 2024) to no avail. In *Douglas,* Defendant filed a Motion for Summary Judgment where it tried to use the doctrine of concurrent causation with respect to avoiding providing coverage for a hail damaged roof based upon the argument that Plaintiff's expert admitted the roof has some wear and tear. *Id.,* at *3. The Court found that this was not an issue of concurrent causation, rather that if Plaintiff's argument was that the storm was the cause of the needed repairs, that would be sufficient to defeat the concurrent causation issue. *Id.* These facts also are a close match with the Fifth Circuits analysis in *Advanced Indicator & Mfg., Inc.*, 50 F.4th 469 (5th Cir. 2022), where the Court in determining concurrent causation with respect to a wear and tear versus storm damage roof case also held that the concurrent causation doctrine does not bar recovery when Plaintiff's expert testifies that the storm caused all of the damage for which recovery is sought. *Id.,* at 477.

24.    In our case, Dr. Hall's testimony is similar. He found some wear and tear but also hail damage. Hall Declaration, p. 3 [Appx. 0082]. More importantly, he clearly notes that these wear and tear issues are wholly distinct from the hail damages observed. *Id.* (citing his deposition testimony pp. 64-65 [Appx. 0062 - 0063]). This then supported by his conclusion that the only damages for the repairs he suggests forming Plaintiff's damage model is those from hail damage occurring in March 2022. Hall Declaration p.2 [Appx. 0081].

25.    Of additional note, Defendant tries to establish its case by overtly misrepresenting

testimony. In this matter, Defendant has engaged in fishing expeditions subpoenaing every single tenant of the building to try and find out if any tenant had on going issues and deposing the ones who reported any damage.   In this wild goose chase, Defendant attempts to quote just one to support the premise that there were ongoing leaks, Dr. Lam.   Page 13 of Defendant's Motion represents that her testimony was that her space had ongoing leaks since she moved in 10 years ago as support for the wear and tear argument.  *Id.*   This is a flagrant misrepresentation of the testimony.   Dr. Lam's testimony was actually quite different when reviewed in totality.   Her response to the Deposition on Written Questions sent to all tenants noted that she notified Plaintiff of leakage in 2017 and again in 2023-2024.  *See* Responses to Question 5, 6 of DWQ attached as Exhibit A to Dr. Lam's Depo which is Exhibit E to Defendant's Motion.   Her actual testimony was not that she was sure of continual leakage through the years, rather it was that she was sure of leakage in 2017 and later in 2023-2024, but she could not be certain whether or not there were leaks at any other time. Depo of Lam, pp. 6-9, attached as Exhibit E to Defendant's Motion. Quite simply, Defendant puts forth no evidence showing that the hail damages and the existing wear and tear to the roof cannot be distinguished from each other, nor that they both work together to contribute to the damages to the roof, instead of being independent of each other.  As a result of the above, Defendant's arguments do not support the granting of a Motion for Summary Judgment.

   C.    **Defendant's position on concurrent causation is overly broad and overly expands the doctrine.**

26.    All of these issues lead to the final point as to why Summary Judgment should be denied with respect to the contractual cause of action.  Defendant's position in this matter is more than just a determination over hail's impact to this roof, it is, in reality, a more nefarious attempt to back-end re-underwrite the insurance policies in general. As a point of broader public policy, this Motion should be denied and the presentation of the arguments of this Motion suggest intentional bad faith claim's handling in the underwriting of the Policy.

27.    Let us explain.  First, with respect to the entering of the Policy: The facts are undisputed

that this Policy took effect on Jan. 7, 2022. The facts are also undisputed that Defendant had the ability to enter or not enter the Policy of Insurance. It is not disputed that the Defendant accepted the premium payment for the property and also agreed to provide coverage under the Policy for damages caused by windstorm or hail during the Policy period, including to the roof.

28.     Second, with respect to the property: A large portion of Defendant's Motion is predicated on explaining to the Court that the roof was not new at the time of the Policy inception and had exhibited signs of aging. Hall, to his credibility, acknowledges this. But Defendant knew this too. It elected to insure an older roof for damage associated with hail and wind. If Defendant did not want to afford this coverage, it should not have underwritten the Policy for this property.

29.     This then leads to the third point, the more nefarious conclusion: If the Court were to agree with Defendant's arguments contained in the Motion, that the roof was so bad and in need of repair, and already past its useful life, and it was already in need of replacement prior to inception of the Policy, then under what circumstances could coverage ever be afforded to this roof under this Policy for windstorm or hail damages. In essence, taking Defendant's position to its logical end, even though Defendant gladly accepted premiums for this Policy, there could never be a circumstance, based upon the condition of the roof at the time of underwriting where Defendant would ever owe for damages occurring to this roof because every not new roof would have some wear and tear as a function of its existence over time.

> As an insurance policy is a contract, the overall agreement must be evaluated to determine the purposes the parties had in mind at the time they formed the contract. *Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.,* 320 S.W.3d 829, 841 (Tex.2010). "Terms in insurance contracts that are subject to more than one reasonable construction are interpreted in favor of coverage." *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London,* 327 S.W.3d 118, 133 (Tex.2010) (citation omitted).

*G.P. Partners, Ltd. V. Maryland Cas. Co.,* 505 F. App'x 389, 392 (5th Cir. 2013). Under Defendant's theory, for any damage to the roof, Defendant would just apply the doctrine of concurrent causation on this roof and avoid coverage. That would not only not give the terms Insurance Policy force and effect but is also a separate and independent act of bad faith and

Defendant's duty of good faith and fair dealing to Plaintiff, by not giving advance notice to the insured that the roof would not be afforded coverage for damages sustained during the Policy period.

**D.      Defendant is also not entitled to Summary Judgment on the Extra-Contractual Claims.**

30.     In its final arguments, Defendant argues that Plaintiff's extra-contractual damages and damages under Tex. Ins. Code Ch. 542 should be dismissed, namely for the argument that since its underlying Motion with respect to the breach of contract should be dismissed, that the extra-contractual claims should be dismissed.

   *1. The Claims under the Prompt Payment of Claims Act and Accompanying Attorney's Fees Should not be dismissed.*

31.     The issue of recovery under the Prompt Payment of Claims Act, *Tex, Ins. Code* Sec. 542.051, et seq., is not yet ripe.  To make the analysis of this section simple, it expressly turns on the contract, none of the facts or analysis of timing provided by Defendant in their briefing makes any difference.  If ultimately this Court rules, through summary judgment or trial, that there was no damages to be awarded to Plaintiff, then there is no claim for damages or attorney's fees under Tex. Ins. Code 542. On the other hand, if the Court finds that damages were owed under the Policy for the damages as a result of a storm during the Policy period, then liability under Tex. Ins. Code Ch. 542, including attorney's fees and interest is automatic. Compliance with the timelines makes no difference if the proper payment is not tendered at that time. *See Hinojos v. State Farm Lloyds*, 619 S.W. 3d 651 (Tex. 2021).  In this case, that time period would start no later than April 24, 2023, denial letter and accrue until the judgment is entered.

   *2. More than enough facts exist on bad faith extra-contractual issues to withstand a Motion for Summary Judgment.*

32.     Defendant's argument against bad faith (whether insurance code, DTPA or common-law) is essentially that it acted reasonably because it relied upon its experts, making citation to those reports, and noting that because this reliance was not unreasonable, that this is evidence of no bad

faith. There are several problems with this argument which Plaintiff will briefly touch upon in its response. Again, the purpose of this response is to provide sufficient evidence to create a fact issue to defeat summary judgment, not that Plaintiff presents the entirety of their case-in-chief. With that in mind, this is about the easiest lawsuit to show evidence of bad faith. Defendant's primary contention is that Plaintiff has no evidence to show that the adjuster and engineering reports were not objectively prepared and that AXIS' decision was in bad faith. Defendant's Motion, p. 16.

33.     First and foremost, there is the dispositive testimony of Brandon Allen, Defendant's adjuster. It is further important to note that Allen was designated by Defendant in this matter not only with respect as to the cause of damages, but also as an expert on claims handling and the identification of hail damage. Defendant's Designation of Expert Witnesses [P.Appx. 0175 - 0176]. With respect to his "own" report upon which Axis reported relies, Allen testifies in part:

- His report was rejected and changes were made which he did not agree with. Deposition of Allen, p. 9:1-12 [Appx. 0003]

- Despite the report bearing his name stating the contrary, Allen testified that he observed hail damage all across the roof. Deposition of Allen, p. 15:9-16:2 [Appx. 0005]

- Allen testified the statements attributed to him about the roof not having functional damage were changed and false. Deposition of Allen, p. 22:1-22:24 [Appx. 0007]

- Allen testified that despite his opinions otherwise, he was told to write his evaluation as a denial, which he felt was unethical. Deposition of Allen, p. 25:8-21 [Appx. 0007]

- Allen testified that the claim handling took longer than it should have. Deposition of Allen, pp. 53:23-55:10 [Appx. 0014 - 0015]

- Allen testified that the EFI engineering report was "laughable" as it did not find that there was any hail on the roof, even though Allen observed the actual hail damage. Deposition of Allen, p. 70:20-71:17 [Appx. 0019]

While this is not an exhaustive list of all of Plaintiff's evidence of supporting bad faith, it is well more than required to defeat a Motion for Summary Judgment, especially considering that all of

this testimony comes from Defendant's own designated expert on claims handling and claim evaluation. If this does not support evidence of bad faith, it is hard to imagine any facts of any case amounting to bad faith.

34. To the extent more facts are necessary, Defendant's position as to an engineering inspection being an objective part of their investigation is also a sham. While Defendant represents it relied on the finding of EFI to reach a claim conclusion [Defendant's Motion, p. 16], the facts tell a different story. The EFI report was prepared on March 30, 2023, from a March 27, 2023, inspection and a January 26, 2023, date of hire. *See* EFI Report, p. 2, attached to Defendant's Motion as Exhibit B-1. Despite this, Allen noted that AXIS had already decided to deny the claim as of January 4, 2023, after the engineer had been requested but, before the engineer inspection had even taken place. Deposition of Allen, p. 53:1-21 [Appx. 0014]. That is clear evidence of lack of objectivity.

35. Finally, Defendant's Motion also fails in that Defendant cannot meet its burden of proving evidence to support no bad faith. Defendant supports its position by relying on two documents to supports its good faith evaluation, the Allen report and the EFI report. Both have been objected to and should not be considered for purposes of this Motion. The Allen report is a fake as noted above, and the EFI report, even putting the credibility issues aside, has not been property authenticated as expert evidence for consideration for the Motion. Without having properly admissible evidence to support its position, Defendant's Motion on these issues should fail on this independent ground.

## VI.   CONCLUSION AND PRAYER

As shown herein, Defendant has failed to meet its summary judgment burden of proof and its motion must fail. Plaintiff requests that the Court sustain their objections to the evidence.

WHEREFORE, premises considered, for the reasons set forth herein, Plaintiff asks this Court to deny Defendant's Motion for Summary Judgment, sustain Plaintiff's Objections to

Defendant's summary judgment evidence, and Plaintiff further requests any other relief, at law or in equity, to which Plaintiff may show itself to be justly entitled.

> Respectfully submitted,
>
> By: */s/ Jay Scott Simon*
>
> Chad T. Wilson
> Bar No. 24079587
> Southern Bar No. 2246983
> Jay Scott Simon
> Bar No. 24008040
> Southern Bar No. 31422
> CHAD T. WILSON LAW FIRM, PLLC
> 455 East Medical Center Blvd., Suite 555
> Webster, Texas 77598
> Telephone: (713) 222-6000
> Facsimile: (281) 940-2137
> eservice@cwilsonlaw.com
> jsimon@cwilsonlaw.com
>
> ATTORNEY FOR PLAINTIFF

### CERTIFICATE OF SERVICE

I certify that a true and correct copy *Plaintiff's Response to Defendant's Motion for Summary Judgment* has been forwarded to counsel of record via Certified U.S. Mail, facsimile, hand delivery, or CM/ECF system on this day, February 20, 2025:

SHACKELFORD, BOWEN, MCKINLEY & NORTON, LLP

Bruce R. Wilkin
bwilkin@shackelford.law
Artis G. Ulmer, III
aulmer@shackelford.law
717 Texas Avenue, 27th Floor
Houston, Texas 77002
Telephone: (832) 415-1801
Facsimile: (832) 565-9030

ATTORNEY FOR DEFENDANT

> */s/ Jay Scott Simon*
> Jay Scott Simon